01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09 FRANCISCO G. RABANG,                    )
                                           )
10        Petitioner,                      )   Case No.:  C04-1745-TSZ-JPD
                                           )
11    v.                                   )
                                           )
12 UNITED STATES OF AMERICA,               )   REPORT AND RECOMMENDATION
                                           )
13        Respondent.                      )
   _____ )
14

15            INTRODUCTION AND SUMMARY CONCLUSION

16        Petitioner is a federal prisoner currently incarcerated at the United States Penitentiary in

17 Lompoc, California.  Petitioner has filed a motion under 28 U.S.C. § 2255 seeking to vacate,

18 set aside, or correct his 2000 federal court sentence.  Respondent has filed a response opposing

19 petitioner's motion.  Following a careful review of the record, this Court concludes that

20 petitioner's § 2255 motion should be denied.

21                              FACTS

22        On July 18, 2000, petitioner entered into a Plea Agreement with the government in

23 which he pleaded guilty to one count of conspiracy to import and distribute over 100 kilograms

24 of marijuana.  Case No. CR00-184, Dkt. No. 126.   According to the Plea Agreement,

25 petitioner admitted to the following facts:

26

REPORT AND RECOMMENDATION
PAGE -1

> [Petitioner] ran an organization which smuggled U. S. currency into Canada to buy marijuana and smuggled Canadian marijuana into the United States for distribution. On dozens of occasions Mr. Rabang employed family members and others to move the currency, in amounts as large as $130,000, into Canada and to pick up multi-pound loads of marijuana . . . . For instance, an 111 pound load of marijuana intercepted by law enforcement in January of 1999 at the U. S.-Canadian border was being brought in for Mr. Rabang and under his supervision. Money was moved north into Canada and marijuana was smuggled south into the United States by truck and car and by "runners" who walked or threw bags of marijuana across the international border to people waiting on this side.

Case No. CR00-184, Dkt. No. 126.

On October 16, 2000, petitioner was sentenced to 135 months in prison, to be followed by five years of supervisory release. Case No. CR00-184, Dkt. No. 222. Petitioner's crime yielded a base offense level of 28, but the sentencing court imposed a three-level enhancement for his supervisory roles in the crime and an additional two-point enhancement for using a minor in the operation. Dkt. Nos. 2, 16. Petitioner also received a three-point reduction for accepting responsibility for his crime. Dkt. Nos. 2, 16.

Petitioner did not file a direct appeal. Instead, he seeks relief from his sentence by filing this § 2255 motion to vacate, set aside, or correct his federal court sentence. Dkt. No. 2.

<u>CLAIMS FOR RELIEF</u>

Petitioner argues in his motion that he is entitled to relief under *Blakely v. Washington*, 124 S. Ct. 2531 (2004), because certain factors were used to increase his sentence that were never decided by a jury beyond a reasonable doubt nor admitted by petitioner. Dkt. No. 2. Specifically, petitioner cites to the five-point enhancement he received for being the "leader or organizer" of the conspiracy and for using "a minor to commit the offense." Dkt. No. 2. Further, petitioner argues that *Blakely* should apply retroactively to his case, now on initial collateral review. Dkt. No. 2.

In its response, respondent argues that the motion should be denied because *Blakely* does not apply retroactively to cases on collateral review. Dkt. No. 16. Respondent further argues that, even if *Blakely* does apply retroactively, it would not benefit petitioner because his

REPORT AND RECOMMENDATION
PAGE -2

01  admission to a leadership role in the conspiracy and use of family members to smuggle drugs

02  was sufficient to sustain his enhanced sentence.  Dkt. No. 16.

03     Sixth months after *Blakely* was decided, the Supreme Court announced its decision in

04  *U.S. v. Booker*, 125 S. Ct. 738 (2005).  Because *Booker* specifically applied the holding in

05  *Blakely* to the Federal Sentencing Guidelines, the Court presumes petitioner would have relied

06  upon it in his motion, had *Booker* been decided at the time he filed.  This Report and

07  Recommendation will therefore analyze petitioner's and respondent's arguments under *Booker*.

08  The issue of retroactivity of *Booker* is dispositive of petitioner's claims.

09                                          <u>DISCUSSION</u>

10     Generally, decisions that establish new rules of law are not applied retroactively to

11  cases on collateral review, including § 2255 habeas petitions.[1]  *Teague v. Lane*, 489 U.S. 288,

12  303, 310-11 (1989)[2] (relying upon *Mackey v. United States*, 401 U.S. 667, 675 (1971)).  There

13  are, however, two exceptions to this rule.  To determine whether new rules should be

14  retroactively applied, the Court must undertake a three-step analysis.  *Beard v. Banks*, 124

15  S. Ct. 2504, 2510 (2004).  First, it must determine when the defendant's conviction became

16  final.  *Id*. at 2510, 2513.  Then, it must decide whether the rule in question is a "new" rule.  *Id*.

17  Finally, if the rule is new, the Court must determine whether it satisfies one of the two narrow

18  exceptions to non-retroactivity.  *Id*.  If the rule is substantive it should be applied retroactively.

19  *Schriro v. Summerlin,* 124 S. Ct. 2519, 2522-23 & n.4 (2004).  Additionally, certain

20  procedural rules may be applied retroactively if they constitute one of a very "small set of

---

23     [1]Such rules, however, are generally applied to cases still pending on direct appeal.
24  *Griffith v. Kentucky*, 279 U.S. 314, 328 (1987); *see also U.S. v. Ameline*, _____F.3d _____
    (2005) (en banc) (requiring limited remand for cases raising *Booker* claims on direct review).

25     [2]Although *Teague* was a four justice plurality opinion, it is now "accorded the full
26  precedential weight of a majority opinion."  *Jones v. Smith,* 231 F.3d 1227, 1236 n.5 (9th Cir.
    2000) (internal citations omitted).

REPORT AND RECOMMENDATION
PAGE -3

01 'watershed rules of criminal procedure' [that implicate] the fundamental fairness and accuracy

02 of the criminal proceeding." *Id.* at 2523 (quoting *Teague,* 489 U.S. at 311).

03     Here, petitioner has failed to show that the rule announced in *Booker* should be applied

04 retroactively to cases on collateral review.

05     A.   Petitioner's Case Was Final Before *Booker* Was Issued

06     A conviction typically becomes final for purposes of federal habeas review when the

07 Supreme Court denies a petition for certiorari or when the time for filing such a petition has

08 elapsed. *United States v. Garcia*, 210 F.3d 1058, 1059 (9th Cir. 2000) (citing *Griffith v.*

09 *Kentucky*, 479 U.S. 314 (1987)). A defendant's conviction also becomes final when the time

10 for appealing his sentence has passed. *See United States v. Calvin*, 204 F.3d 1221, 1225 (9th

11 Cir. 2000).

12     Here, the district court issued its final judgment on October 16, 2000. (Case No.

13 CR00-184, Dkt. No. 223). Petitioner had ten days by which to file an appeal, but he did not.

14 *See* Fed. R. App. P. 4(b)(1)(A). Petitioner's conviction therefore became final well before the

15 Supreme Court announced its decision in *Booker* on January 12, 2005. Because petitioner's

16 case became final prior to *Booker*, for purposes of retroactivity analysis, the Court must

17 determine whether *Booker* announced a "new" rule.

18     B.   *Booker* Announced a New Rule

19     Generally, decisions that establish "new" rules of law are not applied retroactively to

20 cases on collateral review, including § 2255 habeas petitions. *Teague*, 489 U.S. at 303, 310-11

21 (referring to *Mackey v. United States*, 401 U.S. 667, 675 (1971)). A court announces a new

22 rule for purposes of retroactivity when it "breaks new ground or imposes a new obligation on

23 the States or Federal Government." *Teague*, 489 U.S. at 301 (internal citations omitted).

24 Stated differently, a rule is new if its result "was not *dictated* by precedent existing at the time

25 the defendant's conviction became final." *Id.* (emphasis in original); *accord Bockting v. Bayer*,

26 399 F.3d 1010, 1014-15 (9th Cir. 2005). One test is whether the unlawfulness of the

REPORT AND RECOMMENDATION
PAGE -4

01 conviction in question was "apparent to all reasonable jurists." *Beard*, 124 S. Ct. at 2511

02 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997).

03      *Booker* announced a new rule for purposes of retroactivity analysis.  In *Booker*, the

04 Court noted that "[a] new rule for the conduct of criminal prosecutions is to be applied

05 retroactively to all cases . . . pending on direct review or not yet final, with no exception for

06 cases in which the new rule constitutes a 'clear break' with the past." *Booker*, 125 S. Ct. at

07 769.  Such language would have been superfluous were the rule dictated by precedent.

08 Moreover, as the Sixth Circuit noted in *Humphress v. United States*, 398 F.3d 855, 861-62

09 (6th Cir. 2005) (collecting cases), the federal judiciary was deeply divided over the effect of

10 *Blakely* on the Guidelines.  The fact that four Supreme Court justices dissented in *Booker* lends

11 further support to this argument.  With such widespread disagreement among the minds of

12 "reasonable jurists" throughout the judiciary as to the effect of *Blakely*, it can hardly be said

13 that the rule in *Booker* was "dictated" by then-existing case law before it was announced.

14 *Booker* thus constitutes a "new rule" for purposes of retroactivity analysis.

15      C.      *Booker* <u>Announced a Procedural Rule.</u>

16      Substantive rules are defined as those that "narrow the scope of a criminal statute by

17 interpreting its terms [or that make] . . . constitutional determinations that place particular

18 conduct or persons covered by the statute beyond the State's power to punish." *Summerlin*,

19 124 S. Ct. at 2522 (citing *Bousley v. United States,* 523 U.S. 614, 620-21 (1998); *Saffle v.*

20 *Parks*, 494 U.S. 484, 494-95 (1990); *Teague*, 489 U.S. at 311)); *see also Bockting*, 399 F.3d

21 at 1016.  Substantive rules can also be said to "alter[ ] the range of conduct or the class or

22 persons that the law punishes." *Summerlin*, 124 S. Ct. at 2522-23.  They also modify the

23 elements of a crime. *Summerlin*, 124 S. Ct. at 2524.  Substantive rules apply retroactively

24 because they "necessarily carry a significant risk that a defendant stands convicted of an act

25 that the law does not make criminal or faces a punishment that the law cannot impose upon

26 him." *Id*. at 2522, 2524 (internal citations and quotations omitted).

REPORT AND RECOMMENDATION
PAGE -5

01        Conversely, rules that "regulate only the *manner of determining* the defendant's

02    culpability are procedural." *Summerlin*, 124 S. Ct. at 2522 (emphasis in original).  According

03    to the Supreme Court, rules that allocate decision making authority between judge and jury for

04    purposes of the Sixth Amendment are "prototypical procedural rules."  *Id.*  Unlike their

05    substantive counterparts, new procedural rules are generally not applied retroactively because

06    they "merely raise the possibility" that someone convicted of a crime might have otherwise

07    been acquitted.  *Id.* at 2523.

08        *Summerlin* makes clear that *Booker*, which impacts the allocation of decisionmaking

09    authority for Sixth Amendment purposes, is a procedural rule.  *Summerlin* addressed the

10    question of whether *Ring v. Arizona*, 536 U.S. 584 (2002), should be applied retroactively to

11    cases on collateral review, and concluded that it did not.  In *Ring*, the Supreme Court held that

12    an Arizona sentencing scheme that enabled a judge — not a jury — to determine sentencing

13    factors for capital cases by a preponderance of the evidence violated the Sixth Amendment.

14    *Ring*, 536 U.S. at 603-09.  Because *Ring* only addressed the constitutionality of the law in the

15    context of a direct appeal, its application to a collateral habeas corpus attack remained to be

16    determined.

17        To determine whether *Ring* should apply retroactively, *Summerlin* applied *Teague's*

18    retroactivity analysis and concluded that the holding was procedural in nature.  Specifically, the

19    Court found that *Ring's* requirement that juries determine certain capital sentencing factors did

20    not "alter the range of conduct Arizona law subjected to the death penalty."  *Summerlin*, 124

21    S. Ct. at 2523.  In fact, the Court reasoned that it was impossible for it to have done so

22    because the decision "rested entirely on the Sixth Amendment's jury trial guarantee, *a*

23    *provision that has nothing to do with the range of conduct a State may criminalize*."  *Id.*

24    (emphasis added).  Instead, *Ring* merely affected the "range of permissible methods for

25    determining whether a defendant's conduct is punishable[.]"  *Id.*  The Court then concluded

26

01 that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural

02 rules[.]" *Id.*

03     The Ninth Circuit's analysis of whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

04 applies retroactively also supports the conclusion that *Booker* announced a procedural rule.

05 *Apprendi* held that "[o]ther than the fact of conviction, any fact that increases the penalty for a

06 crime beyond the prescribed statutory maximum must be submitted to a jury and proved

07 beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  Applying *Teague*, the Ninth Circuit

08 has held that *Apprendi* was a new rule of criminal procedure and that it was not retroactively

09 applicable to cases on collateral review.  *United States v. Sanchez-Cervantes*, 282 F.3d 664,

10 668-71 (9th Cir. 2002); *Jones v. Smith*, 231 F.3d 1227, 1236-38 (9th Cir. 2001).  Since then,

11 the court has also held that *Apprendi*, as extended in *Blakely*, does not apply retroactively to

12 cases on collateral review.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir.

13 2005); *see also Cook v. United States*, 386 F.3d 949 (9th Cir. 2004) (in the context of a

14 second or successive § 2255 motion).  Thus, both the Supreme Court and Ninth Circuit have

15 held that *Apprendi, Blakely*, and related Sixth Amendment cases do not announce substantive

16 rules because they merely relate to the allocation of decisionmaking during sentencing and not

17 to the substantive nature of any underlying crime.

18     There is no meaningful distinction between the type of constitutional rule held not to

19 apply retroactively in *Summerlin*, *Sanchez-Cervantes*, and *Cook*, and the type of constitutional

20 rule announced in *Booker*.  Like those cases, *Booker* is based upon the Sixth Amendment's

21 requirement that certain sentencing factors be proved to a jury rather than to a judge.  Indeed,

22 like *Ring* and *Blakely*, *Booker* rests largely upon *Apprendi's* holding that the Sixth Amendment

23 requires that "[o]ther than the fact of conviction, any fact that increases the penalty for a crime

24 beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a

25 reasonable doubt." *Apprendi*, 530 U.S. at 490.  Like those cases, *Booker* has nothing to do

26 with the range of conduct that the State can criminalize nor the elements of any underlying

REPORT AND RECOMMENDATION
PAGE -7

01    criminal statute.  Rather, *Booker* deals with the allocation of decisionmaking authority between

02    judge and jury.  Hence, like the decisions discussed above, the decision in *Booker* is a

03    "prototypical procedural rule[ ]" that should not be applied retroactively to cases on collateral

04    review.

05        For the reasons stated above, the new rule announced in *Booker* is procedural in nature.

06    The Court must therefore determine whether the rule fits into the narrow exception to the

07    general rule against retroactive application of new procedural rules on collateral review.

08        D.     <u>*Booker* Does Not Fit Within the Narrow Exception for"Watershed" Rules</u>.

09        Because procedural rules have a more attenuated link to the accuracy of a criminal

10    conviction, only a limited number of "watershed rules of criminal procedure" that implicate the

11    fundamental fairness and accuracy of the underlying criminal proceeding will be applied

12    retroactively.  *Summerlin*, 124 S. Ct. at 2523 (quoting *Teague*, 489 U.S. at 288); *Bockting*,

13    399 F.3d at 1016-17.  To apply retroactively, a rule may not just be "fundamental" in an

14    abstract sense, but instead must "alter our understanding of the *bedrock procedural elements*

15    essential to the fairness" of a conviction.  *Teague*, 489 U.S. at 311 (internal citations omitted;

16    emphasis in original); *Summerlin,* 124 S. Ct. at 2523.

17        This class of procedural rules is so narrow that the Supreme Court indicated in 2004

18    that it is "unlikely" that one has yet to emerge.  *Summerlin*, 124 S. Ct. at 2523; *Bockting*, 399

19    F.3d at 1016-17.  The Supreme Court has referred only to the right to counsel announced in

20    *Gideon v. Wainright*, 372 U.S. 335 (1963) as an example of a procedural rule that might

21    constitute a watershed rule.  *Beard*, 124 S. Ct. at 2514 (internal citations omitted).  The Ninth

22    Circuit has held that the right to cross-examine witnesses who make certain hearsay statements,

23    guaranteed by the Confrontation Clause, "joins the very limited company of *Gideon*."

24    *Bockting*, 399 F.3d at 1019.  In making this determination, the Ninth Circuit noted that the

25    Supreme Court has described the right of confrontation as a "bedrock procedural guarantee"

26    that "dates back to Roman times" and that its importance was recognized by the founding

REPORT AND RECOMMENDATION
PAGE -8

01  generation. *Bockting*, 399 F.3d at 1020 (quoting *Crawford v. Washington*, 541 U.S. 36

02  (2004).  These limited cases underscore the extremely narrow scope of the "watershed"

03  exception, and demonstrate that its application is reserved for only a very limited number of

04  truly fundamental procedural rules.

05      Conversely, the Supreme Court has held that cases that affect the manner in which

06  sentencing enhancements are determined do not constitute watershed rules that implicate the

07  fundamental fairness of a conviction.  *See*, *e.g.*,  *Summerlin*, 124 S. Ct. at 2526.  The Ninth

08  Circuit has acknowledged this distinction as well.  In *Bockting*, the court explicitly juxtaposed

09  *Summerlin* and *Crawford* to demonstrate why only the latter constituted a procedural rule of

10  watershed magnitude.  399 F.3d at 1016.  Specifically, the court explained that *Crawford*'s rule

11  was "unequivocally" recognized as a rule whose absence "seriously decreases the possibility of

12  accurate conviction," whereas it was decidedly unclear whether the same was true of the rule in

13  *Summerlin*.  *Id.*

14      Given controlling authority in this Circuit, current precedent and the extremely narrow

15  range of procedural rules that can be applied retroactively, *Booker* cannot be said to constitute

16  a watershed rule.  Petitioner has not articulated how *Booker* differs from *Blakely*, nor identified

17  any change in controlling authority that supports his argument for retroactive application.

18      The district courts in the Ninth Circuit have so far reached similar conclusions.  *See,*

19  *e.g., United States v. Lopez -Cerda*, ____ F. Supp. 2d ____, 2005 WL 1056658 (E.D. Wash.

20  2005); *Fain v. United States,* ____ F. Supp. 2d ____, 2005 WL 1111235 (W.D. Wash. 2005);

21  *U.S. v. Melton*, ____ F. Supp. 2d ____, 2005 WL 1213666 (D. Alaska 2005) (Report and

22  Recommendation); *U.S. v. Brown*, 2005 WL 1259889 (D. Alaska 2005) (Report and

23  Recommendation); *but see United States v. Siegelbaum,* 359 F. Supp.2d 1104, 1108 (D. Or.

24  2005) (rejecting petitioner's § 2255 motion but recognizing that *Booker* and *Blakely* could be

25  found to apply retroactively).  Moreover, to the Court's knowledge, every Circuit Court to

26  have considered whether *Booker* applies retroactively to cases on collateral review has

01 | determined that it does not.  *See, e.g., United States v. Green*, ____ F.3d ____, 2005 WL

02 | 237204 (2d Cir. 2005); *United States v. Humphress*, ____ F.3d ____, 2005 WL 433191 (6th

03 | Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *United States v.*

04 | *Leonard*, ____ F.3d ____, 2005 WL 139183 (10th Cir. 2005).  Until the Ninth Circuit

05 | determines otherwise, *Booker*, like *Apprendi* and *Blakely* before it, cannot be applied

06 | retroactively to cases on collateral review.

07 | CONCLUSION

08 |       Because this Court concludes that neither *Blakely* nor *Booker* apply retroactively to

09 | § 2255 cases on collateral review, petitioner's § 2255 motion must be denied.  A proposed

10 | order accompanies this Report and Recommendation.

11 |       DATED this 6th day of June, 2005.

12

13 | *James P. Donohue*

14 | JAMES P. DONOHUE
United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE -10